# **EXHIBIT A**

**SUMMONS - CIVIL**
JD-CV-1   Rev. 2-20
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a, 52-48, 52-259;
P.B. §§ 3-1 through 3-21, 8-1, 10-13

| For information on ADA accommodations, contact a court clerk or go to: *www.jud.ct.gov/ADA.* |
|---|

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*



**Instructions are on page 2.**

☐ Select if amount, legal interest, or property in demand, not including interest and costs, is LESS than $2,500.

☒ Select if amount, legal interest, or property in demand, not including interest and costs, is $2,500 or MORE.

☐ Select if claiming other relief in addition to, or in place of, money or damages.

**TO: Any proper officer**
By authority of the State of Connecticut, you are hereby commanded to make due and legal service of this summons and attached complaint.

| Address of court clerk *(Number, street, town and zip code)* | Telephone number of clerk | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 123 Hoyt Street, Stamford, Connecticut 06905 | ( 203 ) 965 – 5308 | July 6, 2021 |

| ☒ Judicial District | G.A. | At *(City/Town)* | Case type code *(See list on page 2)* |
|---|---|---|---|
| ☐ Housing Session | ☐ Number: | **Stamford** | Major: **T**   Minor: **90** |

**For the plaintiff(s) enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(if attorney or law firm)* |
|---|---|
| Gainey McKenna & Egleston, 501 Fifth Avenue, 19th Floor, New York, New York 10017 | 415732 |

| Telephone number | Signature of plaintiff *(if self-represented)* |
|---|---|
| ( 212 ) 983 – 1300 | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book.   ☐ Yes   ☐ No | E-mail address for delivery of papers under Section 10-13 of the Connecticut Practice Book *(if agreed)* **egleston@gme-law.com** |
|---|---|

| Parties | Name *(Last, First, Middle Initial)* and address of each party *(Number; street; P.O. Box; town; state; zip; country, if not USA)* | |
|---|---|---|
| **First plaintiff** | Name: **City Of Pontiac Police and Fire Retirement System, Derivatively On Behalf Of World Wrestling Entertainm** | P-01 |
| | Address: **c/o Gianey McKenna & Egleston, 501 Fifth Avenue, 19th Floor, New York, New York 10017** | |
| **Additional plaintiff** | Name: | P-02 |
| | Address: | |
| **First defendant** | Name: **McMahon, Vincent K.** | D-01 |
| | Address: **14 Hurlingham Dr, Greenwich, CT 06831** | |
| **Additional defendant** | Name: **Barrios, George A.** | D-02 |
| | Address: **88 Martingale Lane, Fairfield, CT 06824** | |
| **Additional defendant** | Name: **Wilson, Michelle D.** | D-03 |
| | Address: **14 Ravenglass Drive, Stamford, CT 06903** | |
| **Additional defendant** | Name: **World Wrestling Entertainment, Inc.** | D-04 |
| | Address: **1241 East Main Street, Stamford, CT 06902** | |

| Total number of plaintiffs: 1 | Total number of defendants: 4 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

## Notice to each defendant

1. **You are being sued.** This is a summons in a lawsuit. The complaint attached states the claims the plaintiff is making against you.

2. To receive further notices, you or your attorney must file an *Appearance* (form JD-CL-12) with the clerk at the address above. Generally, it must be filed on or before the second day after the Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to appear.

3. If you or your attorney do not file an *Appearance* on time, a default judgment may be entered against you. You can get an *Appearance* form at the court address above, or on-line at https://jud.ct.gov/webforms/.

4. If you believe that you have insurance that may cover the claim being made against you in this lawsuit, you should immediately contact your insurance representative. Other actions you may take are described in the Connecticut Practice Book, which may be found in a superior court law library or on-line at https://www.jud.ct.gov/pb.htm.

5. If you have questions about the summons and complaint, you should talk to an attorney.
   **The court staff is not allowed to give advice on legal matters.**

| Date | Signed *(Sign and select proper box)* | ☒ Commissioner of Superior Court | Name of person signing |
|---|---|---|---|
| **June 7, 2021** | *Gregory M. Egleston* | ☐ _____ Clerk | **Gregory M. Egleston** |

| If this summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the plaintiff(s) will not be denied access to the courts. | File Date |
| b. It is the responsibility of the plaintiff(s) to ensure that service is made in the manner provided by law. | |
| c. The court staff is not permitted to give any legal advice in connection with any lawsuit. | |
| d. The Clerk signing this summons at the request of the plaintiff(s) is not responsible in any way for any errors or omissions in the summons, any allegations contained in the complaint, or the service of the summons or complaint. | |

| I certify I have read and understand the above: | Signed *(Self-represented plaintiff)* | Date | Docket Number |
|---|---|---|---|

| Print Form | Page 1 of 2 | Reset Form |
|---|---|---|

**RETURN DATE:    JULY 6, 2021**

| | | |
|---|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | : : : : : | **SUPERIOR COURT JUDICIAL DISTRICT OF STAMFORD/NORWALK AT STAMFORD** |
| Plaintiff, | : : | |
| vs. | : : : | **VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR** |
| VINCENT K. McMAHON, GEORGE A. BARRIOS and MICHELLE D. WILSON, | : : : : | **BREACH OF FIDUCIARY DUTY, AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY, UNJUST** |
| Defendants, | : : : | **ENRICHMENT, INDEMNIFICATION AND CONTRIBUTION** |
| – and – | : : | |
| WORLD WRESTLING ENTERTAINMENT, INC., a Delaware corporation, | : : : | **DEMAND FOR JURY TRIAL** |
| Nominal Defendant. | : : : | |
| | : | **June 7, 2021** |

## INTRODUCTION

1.      This is a shareholder derivative action on behalf of nominal defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company") for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, contribution, and indemnification against defendants Vincent K. McMahon, George A. Barrios and Michelle D. Wilson (together, "defendants").  Defendants serve, or previously served, as senior executives of WWE.

2.      WWE produces wrestling entertainment content for distribution worldwide, including in the Middle East and North Africa ("MENA").  In November 2018, WWE's media rights agreement with Orbit Showcase Network ("OSN") to distribute WWE wrestling content in the MENA region prematurely ended over a dispute.  This left WWE scrambling to find a replacement media rights agreement with the Saudi General Sports Authority before expiration of the media rights under the OSN Agreement.

3.      Rather than disclose these adverse developments, defendants embarked upon an unlawful scheme to maintain the trading price of WWE common stock at artificially inflated levels. As 2019 unfolded, defendants, despite knowledge of the true facts, repeatedly misled WWE shareholders about the renewal of status the OSN Agreement, which the Company terminated early with OSN in November 2018.

4.      Defendants also materially misled WWE shareholders about the status of WWE's efforts to secure a replacement media rights agreement with Saudi Arabia.  Defendants knew, or recklessly disregarded, the fact that public revelation of the Company's difficulties securing a media rights agreement in the MENA region would cause a lowering of the Company's financial projections and trigger a decline in the trading price of WWE common stock.

5.      By misrepresenting the truth about WWE's media partnerships in the MENA region, defendants breached their fiduciary duties of care and loyalty.  As WWE's top officers,

- 1 -

defendants owed WWE a legal duty to speak the entire truth whenever they undertook to say anything about WWE's business or prospects. Worse yet, before publicly disclosing the adverse non-public facts around the Company's MENA media rights, defendants unloaded over 3.4 million shares of their personal WWE common stock, for insider trading proceeds of $282.1 million – a classic violation of defendants' fiduciary duties as WWE's top executive officers.

6.      Defendants' scheme continued unabated until January 30, 2020, when the truth emerged. On this news, the trading price of WWE common stock collapsed $13.42 per share, or 21.5%, wiping out millions in once-valuable shareholders' equity.

7.      Due to defendants' misrepresentations, WWE shareholders sued the Company and others for violations of the federal securities laws in an expensive and costly-to-defend class action lawsuit. *See City of Warren Police & Fire Retirement System v. World Wrestling Entertainment, Inc., et al.*, No. 1:20-cv-02031-JSR (S.D.N.Y.) ("Securities Action").

8.      On August 6, 2020, the United States District Court for the Southern District of New York, the Honorable Jed Rakoff presiding, sustained the securities class action plaintiffs' claims for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). In particular, Judge Rakoff found:  "Given WWE could not have been engaged in such renewal negotiations at the time because OSN had already terminated the agreement, the complaint has adequately explained with particularity why defendants' 'renewal' and 'ongoing' negotiation statements were false and misleading." *City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't*, 477 F. Supp. 3d 123, 130 (S.D.N.Y. 2020).

9.      The district court continued: "Given the alleged importance of a MENA agreement to WWE's financial projections, plaintiff has thus adequately alleged with particularity not only that WWE failed to disclose its inability to renew a key agreement, but also that this failure had adversely affected WWE's 'financial outlook' by February 2019. Plaintiff has thus alleged with

particularity why the February 2019 risk disclosure statement was misleading." *Id.* at 131 (citation omitted).

10.      By misleading WWE shareholders and insider selling, defendants breached their fiduciary duty to avoid self-dealing and the dissemination of false company information and unjustly enriched themselves at WWE expense.  Nevertheless, WWE's Board of Directors (the "Board"), which is dominated and controlled by defendant Vincent K. McMahon, has not, and will not, take legal action against defendants.  This fact is borne out by the WWE Board's decision to effectively ignore plaintiff's December 10, 2020 Litigation Demand.

11.      Delaware corporation law requires a board of directors to timely accept or reject a litigation demand.  A board cannot lawfully defer or otherwise ignore its legal obligation to respond to a litigation demand.  But this unlawful course of action is precisely the one chosen by WWE's Board.  Worse yet, while failing to discharge its own fiduciary duties, the WWE Board is abetting defendants' defense of myriad lawsuits triggered by their knowing violations of the federal securities and Delaware corporation laws.

12.      The best interests of WWE plainly are not top of mind for the Company's Board.  Accordingly, plaintiff brings this action to further WWE's best interests.  The derivative claims asserted this Complaint will protect WWE's valuable claims against defendants and, once finally adjudicated, make WWE whole for damages and injuries suffered due to defendants' unlawful misconduct.

## JURISDICTION AND VENUE

13.      The Court has personal jurisdiction over each of the parties to this action. Defendants Vincent K. McMahon, George A. Barrios and Michelle D. Wilson are subject to the jurisdiction of this Court because they are citizens of Connecticut.

14.     Venue is proper because defendants Vincent K. McMahon, George A. Barrios and Michelle D. Wilson reside in Connecticut.  Further, nominal defendant WWE is headquartered at 1241 East Main Street, Stamford, Connecticut 06902.

## THE PARTIES

15.     Plaintiff City of Pontiac Police and Fire Retirement System is and continuously has been a shareholder of WWE since at least 2018.

16.     Nominal defendant WWE is a Delaware corporation with its principal executive offices located in Stamford, Connecticut.  According to its public filings, WWE is an integrated media and entertainment company engaged in the production and distribution of wrestling entertainment content through various channels, including pay-per-view and live events.  WWE's stock trades on the New York Stock Exchange under the ticker symbol "WWE."

17.     Defendant Vincent K. McMahon ("McMahon") is the Chief Executive Officer ("CEO") of WWE as well as a member of WWE's Board that he dominates and controls.

18.     Defendant George A. Barrios ("Barrios") served as the co-President of WWE from February 2018 to January 2020.  Previously, Barrios served as WWE's Chief Strategy & Financial Officer from November 2013 to January 2018.

19.     Defendant Michelle D. Wilson ("Wilson") served as the co-President of WWE from February 2018 to January 2020.  Previously, Wilson served as WWE's Chief Revenue & Marketing Officer from November 2013 to January 2018.

## THE FIDUCIARY DUTIES OF WWE'S OFFICERS

20.     The officers of a Delaware corporation owe fiduciary duties of care and loyalty. They are "expected to pursue the best interests of the company in good faith (*i.e.*, to fulfill their duty of loyalty) and to use the amount of care that a reasonably prudent person would use in similar circumstances (*i.e.*, to fulfill their duty of care)." *Hampshire Grp., Ltd. v. Kuttner*, No. 3607-VCS,

2010 Del. Ch. LEXIS 144, at *35 (Del. Ch. July 12, 2010).  Moreover, corporate officers can be held liable for damages to the corporation if they act with gross negligence.  Unlike directors, "corporate officers cannot be shielded from personal liability by 8 *Del. C.* § 102(b)(7)."  *Id.* at *43.  Thus, officers "face a statutory exposure to liability that is often greater than directors."  *Id.*

21.    Corporate officers are under a fiduciary duty to avoid making false and misleading disclosures.  To this end, corporate officers must speak only the complete and unvarnished truth whenever they speak for the corporation.  Corporate officers likewise must avoid the use their positions of trust and confidence for personal gain by disclosing all material, non-public information before trading in the corporation's common stock.  *Brophy v. Cities Serv. Co.*, 70 A.2d 5 (Del. Ch. 1949).

22.    Here, defendants knowingly failed to uphold these fiduciary duties.

## FACTUAL ALLEGATIONS

23.    WWE produces and distributes wrestling entertainment content through various channels, including pay-per-view and live events.  This includes in the MENA region, which defendants portrayed as a growth opportunity for the Company.

24.    As 2019 unfolded, WWE shareholders became increasingly focused on the status of the Company's media partnerships in the MENA region, including its media rights agreement with OSN.  Unknown to the public, however, WWE's agreement with OSN had ended prematurely in November 2018 over a dispute, leaving WWE scrambling to find a replacement media rights agreement in the region.

25.    Rather than publicly disclose these adverse developments, defendants falsely reassured the Company's shareholders that the renewal of its media partnerships in Saudi Arabia remained on track and would be even more lucrative for the Company.  In doing so, defendants breached their fiduciary duty to speak only the complete truth and to avoid disseminating false

information to shareholders.  While misleading shareholders, defendants also sold 3,499,474 shares of their personal WWE shares, for $282.1 million in unlawful insider trading proceeds – a classic self-dealing breach of fiduciary duty under Delaware law.

26.    Defendants' unlawful scheme to maintain the trading price of WWE common stock at artificially inflated levels continued unabated throughout 2019.  But ultimately in early 2020, the truth emerged with disastrous consequences for WWE and its shareholders, as detailed below.

**Defendants' Misrepresentation and Material Omissions**

27.    On February 7, 2019, defendants announced WWE's financial results for fourth quarter and year end 2018, ended December 31, 2018, as well as the Company's financial outlook for 2019.  As to the latter, defendants caused WWE to misrepresent that "management expects the Company to achieve another year of record revenue of approximately $1.0 billion and, as previously communicated, is targeting Adjusted OIBDA of at least $200 million, which would also be an all-time record (up at least 12% from Adjusted OIBDA of $178.9 million in 2018)."

28.    On the same date, defendants participated in a conference call for WWE shareholders and securities analysts.  During the call, defendant Barrios, WWE Co-President, stated, with respect to the Company's critically important media "rights renewal process" outside the United States, that "it's fair to say that all the agreements will be completed substantively by the middle of the year, so we'll announce those as they get done."

29.    On February 7, 2019, WWE filed with the U.S. Securities and Exchange Commission ("SEC") its 2018 Annual Report on SEC Form 10-K.  In the 2018 Annual Report, defendants emphasized the importance of the Company's customer relationships in Saudi Arabia, stating: "[W]e have several important partners, including . . . the General Sports Authority of the Kingdom of Saudi Arabia who, among other things, hosts our live events in the Middle East."

30.     A few weeks later, on February 26, 2019, defendant Barrios spoke at the Morgan Stanley Technology, Media & Telecom Conference.  During his presentation, defendant Barrios stated that the negotiations on the MENA distribution rights deal were "ongoing," with a target to "get that locked down by the middle of the year."

31.     On April 25, 2019, defendants announced WWE's financial results for the first quarter of 2019, which included lower year-over-year revenues.  In response to the Company's disappointing first quarter 2019 results, the Company adjusted its second quarter 2019 financial outlook, stating: "For the second quarter 2019, the Company estimates Adjusted OIBDA of $19 million to $24 million.  This range of results represents a year-over-year decline in Adjusted OIBDA driven by increases in fixed costs, including the timing of strategic investments."  For the full year 2019, the Company's guidance remained largely unchanged, with defendants stating that "management is targeting another year of record revenue of approximately $1.0 billion and, as previously communicated, Adjusted OIBDA of at least $200 million, which would also be an all-time record (up at least 12% from Adjusted OIBDA of $178.9 million in 2018)."

32.     On the same date, defendants participated in a conference call for WWE shareholders and securities analysts.  During the call, defendant Barrios stated, with respect to the Company's 2020 financial outlook, that "[w]e continue to expect strong year-over-year growth in 2020."  Defendant Barrios further stated, with respect to the timing for completion of the Company's international media rights agreements in MENA and elsewhere, that "we're in the process of finalizing our distribution plans for Raw and SmackDown in several international markets.  We expect to finalize these plans later this year and once we have done that and added visibility for 2020 and the rest of our business, we'll provide additional perspective on our strategy, key initiatives, 2020 financial expectations as well as a longer-term financial model."  Critically however, defendants failed to disclose that the Company's media rights agreement with one of its

key MENA customers, OSN, had been terminated under a settlement between WWE and OSN months earlier in late 2018.

33.     On July 25, 2019, defendants announced WWE's financial results for the second quarter of 2019, as well as the Company's financial outlook for the remainder of 2019.  As to the latter, defendants caused WWE to reiterate "its full year guidance, which targets revenue of approximately $1 billion and Adjusted OIBDA of at least $200 million," adding, "[t]his guidance assumes continued improvement in WWE's engagement metrics, a second large scale event in the MENA region, and the completion of a media rights deal in the MENA region."  As to the timing for completion of the MENA media rights deal, defendants caused WWE to state that "[t]he Company believes it has agreements in principle with the Saudi General Sports Authority on the broad terms for the latter two items; however, this understanding is nonbinding."

34.     On the same date, defendants participated in a conference call for WWE shareholders and securities analysts.  During the call, defendant McMahon stated, with respect to the media-rights agreement in the Middle East, that "[o]bviously, there's India and MENA to do, and we are going to be close to announcing those deals very soon."  Defendant Barrios added that "[d]uring the quarter, we achieved adjusted OIBDA of $34.6 million, which exceeded our guidance, primarily due to enhanced revenue recognized in conjunction with our recent event in Saudi Arabia," while defendant Wilson stated that "[d]uring the quarter, we continue[d] to successfully stage large-scale events for our fans, including . . . Super ShowDown in Jeddah, Saudi Arabia."

35.     Also, during the July 25, 2019 conference call, defendants updated shareholders on the status of the Company's media rights renewal process.  Specifically, defendant Barrios stated, in relevant part, as follows:

> For the full year, we continue to target record revenue of approximately $1 billion and adjusted OIBDA of at least $200 million.  This guidance assumes continued

improvement in our engagement metrics, a second large-scale event in the MENA region and the completion of a media rights deal in the MENA region. We believe we have agreements in principles with the Saudi – in principle with the Saudi General Sports Authority on the broad terms for the latter 2 items. However, this understanding is nonbinding. It is possible that either or both of these business developments do not occur on expected terms and/or the engagement does not improve as assumed. We evaluated these potential outcomes and currently believe that [the] most likely downside to our adjusted OIBDA would be approximately $10 million to $20 million below our current outlook. Our full year guidance reflects strong fourth quarter results, substantial revenue growth from both our new content distribution agreements in the U.S. which become effective in that period, and the aforementioned media rights deal in the MENA region.

As you know, we're in the process of finalizing our distribution plans for Raw and SmackDown in 2 international markets, India and the Middle East. As we stated in our last earnings call, we expect to finalize these plans later this year.

36.     On October 31, 2019, defendants announced WWE's financial results for the third quarter of 2019, which included lower revenue and operating income year-over-year. Addressing the Company's financial outlook for the remainder of 2019, defendants stated that the Company has "modifi[ed] its full year 2019 guidance to an adjusted OIBDA range of $180 million to $190 million." Defendants attributed the adjusted full year 2019 guidance to "the delay in completing a previously contemplated agreement in the MENA region and the impact of accelerated investments to support the creation of . . . content."

37.     A few days later, on November 4, 2019, defendants stated that "[f]ollowing the historic *Crown Jewel* event in Riyadh, WWE . . . and the Saudi General Entertainment Authority (GEA) have expanded their live event partnership through 2027 to include a second annual large-scale event." Defendants also announced that "WWE and GEA also continue to work towards the completion of a media agreement in the MENA region."

38.     On January 7, 2020, defendant Barrios spoke at the Citi 2020 Global TMT West Conference. During his presentation, defendant Barrios admitted that WWE had prematurely announced the near-completion of a media rights deal with the Saudi government in July 2019, stating: "In the second quarter, I believe we said when we confirmed or supported the guidance

for full year 2019 was that one of the things that subtended that was our expectation of a new deal in the market.  That didn't come to fruition.  So we talked about it in the third quarter that we continue to work with GSA on those rights.  We think we'll get a deal then, but it didn't come to fruition in the time frame that we thought."

39.     Shortly thereafter on January 30, 2020, WWE suddenly announced the departure of defendants Barrios and Wilson, the Company's two most-senior and longest-serving executives. On the same date, WWE pre-announced its results for the fourth quarter of 2019, revealing that the Company "expects its full year 2019 Adjusted OIBDA to be approximately $180 million."  On this news, WWE's stock price collapsed $13.42 per share, or 21.54%, wiping out tens of millions in once-valuable shareholder equity.

40.     Then, just a few weeks later on February 6, 2020, the Company announced its fourth quarter 2019 results, stating that "'with the delay in completing a Middle East distribution agreement as well as lower business performance than anticipated, our results were at the low-end of guidance.'"

41.     In a conference call with WWE shareholders and analysts almost three months later, defendant McMahon confirmed that a media rights agreement for the MENA region still had not been reached, stating: "As far as the MENA rights is concerned, we're still working on those. Sometimes things move very slowly.  And that's one of those things.  We thought we would have our MENA rights done by now for sure.  We don't.  And there's some degree of uncertainty as to when that's going to happen."

**Defendants' Suspicious Insider Stock Sales**

42.     The officers of a Delaware corporation occupy a position of trust and confidence and must avoid use of their position for personal gain.  Corporate officers who sell their personal

shares of the corporation's securities must first disclose all material facts.  Otherwise they can breach their fiduciary duty by self-dealing.

43.     Here, defendants heeded none of these prohibitions.  Instead, while misleading shareholders, defendants collectively sold over 3.4 million shares of their personal WWE common stock, for unlawful insider trading proceeds exceeding $282.1 million.

44.     In particular, on March 27, 2019, only a few days before media rights under the OSN Agreement officially ended and a month before the Company issued lower-than-expected income projections for the second quarter of 2019, which result in the collapse of WWE's stock price, defendant McMahon sold 3,204,427 shares of his personal WWE common stock, for over $261 million in unlawful insider trading proceeds.

45.     Defendant McMahon's stock sales were suspiciously timed.  They were also suspiciously large in amount; in fact, defendant "McMahon's sales in the class period were 10 times higher as compared to a control period," as the court in the Securities Action found.  *City of Warren*, 477 F. Supp. 3d at 137.

46.     Defendant McMahon's use of adverse, material inside information for personal gain is classic self-dealing – a breach of fiduciary duty that renders defendant McMahon, as well as his cohorts, liable for the resulting damage and injury to the Company.

## DAMAGE AND INJURY TO WWE

47.     WWE has been severely damaged and injured by defendants' unlawful dissemination of false information and self-interested insider trading.

48.     As the truth emerged in early 2020, and defendants' deceit became public, shareholders sued WWE violation of §§ 10(b) and 20(a) of the Exchange Act.  The Securities Action specifically challenges defendants' misrepresentations and material omissions about the

renewal status of the OSN Agreement and of a replacement media rights agreement with Saudi Arabia, as well as defendants' suspicious self-dealing insider stock sales.

49.    On August 6, 2020, the Honorable Jed Rakoff denied defendants' motion to dismiss the Securities Action.  In sustaining the Securities Action, Judge Rakoff concluded that defendants' statements about the status of renewal of the OSN Agreement were materially false and misleading when made.  "Given WWE could not have been engaged in such renewal negotiations at the time because OSN had already terminated the agreement, the complaint has adequately explained with particularity why defendants' 'renewal' and 'ongoing' negotiation statements were false and misleading."  *City of Warren*, 477 F. Supp. 3d at 130.

50.    Judge Rakoff further concluded that defendants' misrepresentations that a media rights agreement with Saudi Arabia to replace the OSN Agreement was underway and soon to be completed were also materially misleading.  When the statements were made, the district court found that defendants knew WWE was scrambling to find a replacement media partner in the MENA region, and by hiding this adverse material information from shareholders for months, defendants were able to maintain the artificially inflated trading price of WWE stock.  Judge Rakoff further found that defendant McMahon's insider stock sales were not only suspicious in timing and amount, but also probative of defendants' scienter.

51.    Notwithstanding defendants' dissemination of false information and self-interested insider trading, WWE's Board has not – and will not – bring legal action against defendants who are personally responsible for this debacle.  This is because WWE's Board is subservient to defendant McMahon and firmly under his domination and control.

## THE BOARD'S DISDAIN FOR PLAINTIFF'S LITIGATION DEMAND

52.    On December 10, 2020, plaintiff notified WWE's Board of defendants' egregious and unlawful self-dealing misconduct in a written pre-suit Litigation Demand.  Specifically,

plaintiff demanded that WWE sue defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, and contribution and indemnification to recover damages for injuries suffered by the Company due to defendants' misconduct.

53.     That was six months ago, and WWE's Board continues to ignore the Litigation Demand.  WWE has not commenced suit against defendants.  The Company has not even asserted cross-claims against the defendants in the Securities Action, although WWE is a named defendant in that action only because the defendants misled WWE shareholders in order to sell their personal WWE shares at artificially inflated prices.

54.     Delaware law is clear on a board of director's duty in this situation.  Upon receipt of a pre-suit demand from a shareholder, the directors must evaluate the charges in good faith if they are to properly discharge their fiduciary duty to protect and preserve the corporation's assets.

55.     Here however, WWE's Board has functionally ignored the Litigation Demand.  By doing so, the Board has failed in its legal duty to protect WWE's corporate enterprise. Accordingly, plaintiff may bring this action on behalf of WWE against defendants for breach of fiduciary duty, aiding and abetting breaches of fiduciary duties, contribution and indemnification.

### FIRST CAUSE OF ACTION

### (For Breach of Fiduciary Duty
### Against All Defendants)

56.     Plaintiff incorporates ¶¶ 1-55.

57.     At all relevant times, defendants served as WWE's top officers.   As such, defendants owed WWE and its shareholders fiduciary duties of care and loyalty – some of the highest duties known to the law.   At all relevant times, however, defendants breached their fiduciary duty by disseminating knowingly false and/or misleading information about the Company's media rights partnerships in the MENA region.

- 13 -

58.     At all relevant times, while misleading shareholders, defendants also unlawful sold millions of their personal WWE shares at artificially inflated prices for substantial personal gain based on undisclosed adverse material company-specific information.  This violated defendants' fiduciary duty to avoid self-dealing.

59.     Due to defendants' unlawful misconduct, WWE suffered damages and injuries.

60.     Plaintiff, on behalf of WWE, has no adequate remedy at law.

## SECOND CAUSE OF ACTION

### (For Aiding and Abetting Breaches of Fiduciary Duty
Against All Defendants)

61.     Plaintiff incorporates ¶¶ 1-55.

62.     At all relevant times, defendants, and each of them, agreed to and did aid and abet one another in the unlawful misconduct detailed herein, in breach of their fiduciary duties of care and loyalty.  In doing so, defendants engaged in unlawful self-dealing and put their personal interests ahead of the best interests of WWE.  In particular, defendants failed to exercise the care required and breached their duties of loyalty by failing to disclose material information and/or made material misrepresentations to shareholders regarding the Company's media rights partnerships in the MENA region and its prospects for revenue growth.

63.     By reason of the foregoing acts, practices and course of conduct, defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward WWE.

64.     Due to defendants' aiding and abetting one another in their breaches of fiduciary duty, WWE suffered damages and injuries.

65.     Plaintiff, on behalf of WWE, has no adequate remedy at law.

## THIRD CAUSE OF ACTION

### (For Unjust Enrichment
### Against All Defendants)

66.     Plaintiff incorporates ¶¶ 1-55.

67.     At all relevant times, by virtue of their wrongful acts and omissions, defendants unjustly enriched themselves at the expense of WWE.  The Company received no benefit from these payments.

68.     Plaintiff, on behalf of WWE, seeks restitution from defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

69.     Plaintiff, on behalf of WWE, has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### (For Indemnification and Contribution
### Against All Defendants)

70.     Plaintiff incorporates ¶¶ 1-55.

71.     This claim is brought derivatively on behalf of the Company for contribution and indemnification against defendants.

72.     WWE is named as a defendant in the Securities Action.  If WWE is ultimately found liable for violating the federal securities laws, the Company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of some or all of defendants as alleged herein.

73.     Accordingly, WWE is entitled to all appropriate contribution or indemnification from defendants, who are responsible for exposing WWE to liability under the federal securities laws.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.      Against defendants and in favor of the Company for the amounts of damages sustained by the Company as a result of defendants' faithless acts and omissions;

B.      Directing WWE to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect WWE and its shareholders from a repetition of the damaging events described herein;

C.      Extraordinary equitable and/or injunctive relief as permitted by law, equity and the state statutory provisions sued hereunder, including attaching, impounding, and imposing a constructive trust on or otherwise restricting the proceeds of defendants' trading activities or their other assets so as to assure that plaintiff on behalf of WWE has an effective remedy;

D.      Awarding to WWE restitution from defendants, and each of them, including ordering disgorgement of all profits, benefits and other compensation obtained by defendants;

E.      Awarding plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  June 7, 2021                              GAINEY McKENNA & EGLESTON
                                                 GREGORY M. EGLESTON (CT19709)


_____
                                                      GREGORY M. EGLESTON

                                                 501 Fifth Avenue, 19th Floor
                                                 New York, NY  10017
                                                 Telephone:  212/983-1300
                                                 212/983-0380 (fax)
                                                 egleston@gme-law.com

- 16 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
TRAVIS E. DOWNS III
BENNY C. GOODMAN III
ERIK W. LUEDEKE
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tdowns@rgrdlaw.com
bgoodman@rgrdlaw.com
eluedeke@rgrdlaw.com

***Attorneys for Plaintiff***

# VERIFICATION

I, Craig Storum, on behalf of City of Pontiac Police and Fire Retirement System, hereby verify that I am familiar with the allegations in the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Aiding and Abetting Breaches of Fiduciary Duty, Unjust Enrichment, Indemnification and Contribution ("Complaint"), and that the fund authorized the filing of the Complaint and that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 27th day of May, 2021.

CITY OF PONTIAC POLICE AND FIRE
RETIREMENT SYSTEM

By: _____
Chairman

- 1 -