UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, Derivatively on Behalf of WORLD WRESTLING ENTERTAINMENT, INC., | ) ) ) ) ) | No. 3:21-cv-00930-VAB |
| | ) | **PLAINTIFF'S OPPOSITION TO** |
| Plaintiff, | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | **VERIFIED SHAREHOLDER** |
| vs. | ) | **DERIVATIVE COMPLAINT** |
| | ) | |
| VINCENT K. MCMAHON, GEORGE A. BARRIOS and MICHELLE D. WILSON, | ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| – and – | ) | |
| | ) | |
| WORLD WRESTLING ENTERTAINMENT, INC., a Delaware corporation, | ) ) | |
| | ) | |
| Nominal Defendant. | ) | |
| | ) | |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION .................................................................................................1

II.  OVERVIEW OF THE ACTION AND PROCEDURAL POSTURE ................................8

    A.  Defendants Breach Their Fiduciary Duty to Speak the Entire Truth and
Avoid Self-Dealing ................................................................................8

    B.  The New York Action:  Defendants' Admissions and Judicial Findings ..............10

    C.  The Filing of the Action, Defendants' Removal and the Instant Motion to
Dismiss ......................................................................................12

III.  THE SUFFICIENCY OF THE COMPLAINT ESTABLISHES THE BOARD'S
WRONGFUL REFUSAL OF THE LITIGATION DEMAND ........................................12

    A.  The Applicable Pleading Standards ....................................................13

    B.  The Complaint Adequately Alleges Breach of Fiduciary Duty for Making
Knowingly False Statements and Material Omissions ..........................14

    C.  The Complaint Adequately Alleges Breach of Fiduciary Duty for Self-
Dealing and Insider Trading ................................................................16

    D.  The Complaint Adequately Alleges Unjust Enrichment ......................19

    E.  The Complaint Adequately Alleges Indemnification and Contribution ..............19

    F.  The Complaint Adequately Alleges Aiding and Abetting Breach of
Fiduciary Duty ........................................................................21

    G.  The Board Wrongfully Refused the Claims Against Defendants Set Forth
in the Litigation Demand ....................................................................22

IV.  CONCLUSION .....................................................................................24

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*,
604 F. Supp. 1106 (D. Del. 1985) ........................................................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 13

*Brophy v. Cities Serv. Co.*,
70 A.2d 5 (Del. Ch. 1949) ........................................................... 16, 17, 18

*Calma on Behalf of Citrix Sys., Inc. v. Templeton*,
114 A.3d 563 (Del. Ch. 2015) ................................................................ 19

*First Va. Bankshares v. Benson*,
559 F.2d 1307 (5th Cir. 1977) ............................................................... 14

*Gantler v. Stephens*,
965 A.2d 695 (Del. 2009) ...................................................................... 14

*Globis Partners, L.P. v. Plumtree Software, Inc.*,
No. 1577-VCP, 2007 WL 4292024
(Del. Ch. Nov. 30, 2007) ....................................................................... 21

*Grae v. Corr. Corp. of Am.*,
No. 3:16-cv-2267, 2017 WL 6442145
(M.D. Tenn. Dec. 18, 2017) .................................................................. 14

*Grimes v. Donald*,
673 A.2d 1207 (Del. 1996) .................................................................... 13

*Guttman v. Huang*,
823 A.2d 492 (Del. Ch. 2003) ......................................................... 16, 17

*Hampshire Grp., Ltd. v. Kuttner*,
No. 3607-VCS, 2010 WL 2739995
(Del. Ch. July 12, 2010) ........................................................................ 14

*Hausler v. JP Morgan Chase Bank, N.A.*,
127 F. Supp. 3d 17 (S.D.N.Y. 2015) ..................................................... 15

*In re Am. Bus. Fin. Servs., Inc.*,
361 B.R. 747 (Bankr. D. Del. 2007) ...................................................... 14

*In re Am. Int'l Grp., Inc.*,
965 A.2d 763 (Del. Ch. 2009) ................................................. 17, 19, 20, 21

**Page**

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004).................................................................16

*In re Dataproducts Corp. S'holders Litig.*,
  No. 11164, 1991 Del. Ch. LEXIS 149
  (Del. Ch. Aug. 22, 1991)....................................................................................22

*In re Fitbit, Inc.*,
  No. 2017-0402-JRS, 2018 Del. Ch. LEXIS 1218
  (Del. Ch. Jan. 14, 2018) .....................................................................................16

*In re Fruehauf Trailer Corp.*,
  250 B.R. 168 (D. Del. 2000) ........................................................................15, 19

*In re INFOUSA, Inc. S'holders Litig.*,
  953 A.2d 963 (Del. Ch. 2007).............................................................................14

*In re Oracle Corp. Deriv. Litig.*,
  808 A.2d 1206 (Del. Ch. 2002)...........................................................................14

*In re TrueCar, Inc., S'holder Deriv. Litig.*,
  No. 2019-0672-AGB, 2020 WL 5816761
  (Del. Ch. Sept. 30, 2020) ...................................................................................20

*In re Tyson Foods, Inc.*,
  919 A.2d 563 (Del. Ch. 2007).......................................................................19, 20

*In re Tyson Foods, Inc.*,
  No. 1106-CC, 2007 WL 2351071
  (Del. Ch. Aug. 15, 2007)....................................................................................14

*In re Wayport, Inc. Litig.*,
  76 A.3d 296 (Del. Ch. 2013)...............................................................................22

*Ingrao v. Stoppelman*,
  No. 20-cv-02753-EMC, 2020 WL 7025083
  (N.D. Cal. Nov. 30, 2020)...................................................................................22

*Kahn v. Kolberg Kravis Roberts & Co., L.P.*,
  23 A.3d 831 (Del. 2011) .....................................................................................18

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 U.S. 90 (1991)..............................................................................................13

Page

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ........................................................................................14

*Qatar Nat'l Bank v. Winmar, Inc.*,
    650 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................19

*Rattner v. Bidzos*,
    No. 19700, 2003 WL 22284323
    (Del. Ch. Sept. 30, 2003) ....................................................................................17

*Rosenberg v. Oolie*,
    No. 11,134, 1989 WL 122084
    (Del. Ch. Oct. 16, 1989) ......................................................................................17

*Rubinstein v. Collins*,
    20 F.3d 160 (5th Cir. 1994) .................................................................................14

*Spiegel v. Buntrock*,
    571 A.2d 767 (Del. 1990) ....................................................................................13

*Stepak v. Ross*,
    No. 7047, 1985 WL 21137
    (Del. Ch. Sept. 5, 1985) ................................................................................17, 21

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) .............................................................................................13

*Witchko v. Schorsch*,
    No. 15 Civ. 6043 (AKH), 2016 WL 3887289
    (S.D.N.Y. June 9, 2016) .......................................................................................22

*Zapata Corp. v. Maldonado*,
    430 A.2d 779 (Del. 1981) ....................................................................................13

STATUTES, RULES AND REGULATIONS

Securities Exchange Act of 1934
    §10(b)................................................................................................................2, 10
    §20(a)....................................................................................................................10

Fed. R. Civ. P.
    Rule 8(a)(2)...........................................................................................................13
    Rule 9(b) ..........................................................................................................15, 19
    Rule 12(b)(6)...............................................................................................2, 4, 13
    Rule 23.1 ...........................................................................................................2, 23

Defendants' Motion to Dismiss should be held in abeyance, or denied without prejudice, until after the Court determines whether subject matter jurisdiction exists.[1]  *See* Plaintiff City of Pontiac Police and Fire Retirement System's Motion to Remand, dated July 27, 2021 (ECF. No. 39).

Alternatively, the Motion to Dismiss lacks legal merits and, therefore, should be denied. Among its other defects, the Motion to Dismiss relies on alternative "facts."  Specifically, it selectively omits key judicial admissions and determinations made by defendants and the district court, respectively, in a parallel New York federal proceeding (the "New York action").

The omitted facts and findings discredit defendants' arguments.  They also support the claims asserted in plaintiff's City of Pontiac Police and Fire Retirement System's Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Aiding and Abetting Breaches of Fiduciary Duty, Unjust Enrichment and Indemnification and Contribution ("Complaint") (ECF No. 1-1), and demonstrate the Board of Directors of World Wrestling Entertainment, Inc. ("Board") wrongfully refused the claims against defendants.  Accordingly, the Motion to Dismiss should be denied in its entirety.

## I.    INTRODUCTION

Defendants Vincent K. McMahon ("McMahon"), George A. Barrios ("Barrios") and Michelle D. Wilson ("Wilson"), at all relevant times, were the top three senior executive officers of nominal defendant World Wrestling Entertainment, Inc. ("WWE" or the "Company").  McMahon served as WWE's Chief Executive Officer ("CEO").  Barrios and Wilson served as WWE's Co-Presidents (together, defendants McMahon, Barrios and Wilson are referred to as "defendants").

This action originated in the Superior Court of Connecticut with the filing of the Complaint on June 7, 2021, before being removed by defendants on July 7, 2021.  Defendants, together with

---

[1]     Defendants' Motion to Dismiss Verified Shareholder Derivative Complaint ("Motion to Dismiss" or "Defs. Mem.") (ECF No. 13).

WWE, now seek dismissal of plaintiff's Complaint under Rules 12(b)(6) and 23.1 of the Federal Rules of Civil Procedure.

Defendants predicate removal on the ground that the Complaint alleges facts that could also support a claim for violations of the federal securities laws.  Notice of Removal at 6, 8 (ECF. No. 1).  In particular, they suggest that the Complaint alleges that defendants McMahon, Barrios and Williams violated §10(b) of the Securities Exchange Act of 1934 by misrepresenting or omitting material facts regarding renewal of WWE's vital media rights agreements to broadcast events in the Middle East and North Africa ("MENA") region.  Subject matter jurisdiction exists, defendants contend, because plaintiff must prove a federal securities violation to prevail on its breach of fiduciary duty claim.  *Id*.

Pivoting to the instant Motion to Dismiss, defendants further contend that they did not mislead shareholders about WWE's MENA media rights agreements.  As a result, defendants advocate that they did not breach a legal duty to speak the entire truth as WWE's top executive officers.  Defendants' arguments must fail, however.

Defendants' Motion to Dismiss badly cherry-picks the facts.  Most strikingly, it completely ignores that, in August 2020, a New York federal court determined that defendants McMahon, Barrios and Wilson misrepresented and omitted material facts about the status and renewal prospects for WWE's media rights in the MENA region; rights that defendants represented played, and would continue to play a key role in growing the Company's revenues in 2019 and beyond.  ¶¶8-9, 48-50; Declaration of Gregory M. Egleston in Support of Plaintiff's Opposition to Defendants' Motion to Dismiss ("Egleston Decl."), Ex. A at 8-10, 25-28.[2]

---

[2]    Unless otherwise noted, all "¶__" and "¶¶__" references are to the Complaint.  Additionally, all citations are omitted and emphasis added unless otherwise indicated.

Specifically, in an August 6, 2020 Order denying defendants' motion to dismiss in the New York action, the Honorable Jed. S. Rakoff held that "[g]iven WWE could not have been engaged in such renewal negotiations at the time because OSN [Orbital Showcase Network] had already terminated the agreement, the complaint has adequately explained with particularity why defendants' 'renewal' and 'ongoing' negotiation statements were false and misleading."  ¶49; Egleston Decl., Ex. A at 10.  "And even if this were not the case," the court concluded, "it is virtually inconceivable that the CEO and Co-Presidents of WWE would not have been aware of the formal termination by WWE of this important contract – or so a reasonable jury could infer from the facts pleaded in the complaint."  Egleston Decl., Ex. A at 26-27.

Notably, the New York court reached the foregoing conclusions while applying the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). This is relevant because that PSLRA's pleading standard is significantly more stringent than the ones this Court will apply on the pending motion to dismiss.  Egleston Decl., Ex. A at 5.

The August 6th Order also reflects judicial admissions made by defendants in the New York action.  These admissions do great damage to defendants' falsity and scienter arguments here.  Judge Rakoff finds twice in the August 6th Order that defendants do not dispute that WWE formally terminated its media rights agreement with OSN in late 2018.  First the court writes, "it is undisputed that defendants did not disclose until July 2019 that the OSN Agreement, due to expire at the end of 2019, had been formally terminated as of March 31, 2019 as a result of a termination agreement signed in December 2018."  Egleston Decl., Ex. A at 8.  Then the court writes, "[a]s mentioned, defendants do not dispute that they had agreed to early termination of the OSN Agreement and were aware by late 2018 that it would not be renewed . . . ."  *Id.* at 9.  These admissions are clear evidence that defendants' positive statements about the status and renewal of WWE's MENA media rights were knowingly false and misleading when made.  ¶¶8-9, 49-50.

Defendants' admissions also prove their knowledge of the falsity of their statements when made.  Indeed, the New York court held as much when rejecting defendants' lack of scienter, *i.e.*, knowledge of falsity, arguments in light of their admissions discussed above, stating:

> This admission by itself is enough to indicate that WWE was aware of the termination of the OSN Agreement and its inability to be renewed, given that WWE was a party to the negotiations ending the OSN Agreement.  Moreover, given the individual defendants' senior positions at WWE – namely, CEO (McMahon) and Co-Presidents (Barrios and Wilson) – plus the alleged importance of the MENA media rights agreements to their employers' revenue, . . . and the defendants' alleged comments to investors on the status of these agreements, the individual defendants either knew or recklessly disregarded this information as well.

Egleston Decl., Ex. A at 25-26.

Defendants' admissions are binding on them in the New York action.  And they ought to be binding on defendants in this action as well.  Both actions arise from substantially the same facts, according to defendants.  *See* Notice of Removal at 6, 8 (ECF. No. 1).

Just because defendants chose to ignore their own admissions in the Motion to Dismiss here does not mean those admissions simply vanish into thin air.  Instead, the admissions alone are enough to defeat defendants' Rule 12(b)(6) and Rule 23.1 motion to dismiss.

Defendants' removal of this action to federal court has significant implications on the pending Motion to Dismiss.  This is especially true now that the New York action is final.[3]  If defendants' Removal Petition is correct and this action and the New York action arise out of the same facts, and those facts give rise to misrepresentation and material omissions claims under the federal securities laws, then the New York court's previous determination that defendants misrepresented and omitted material facts about WWE's MENA media rights deserve considerable deference by this Court.

---

[3]   The New York court recently entered a final judgment on June 30, 2021.  *See* Egleston Decl., Ex. B at 9.

At a minimum, the federal court's conclusions and findings are persuasive evidence that defendants' dismissal arguments here are without merit.  In fact, those findings should preclude defendants from re-litigating matters already decided against them under a significantly more rigorous pleading standard.  Simply put, defendants cannot have it both ways.  Because the Complaint, when taken as true, states actionable claims against defendants, the Board wrongfully rejected the December 9, 2020 Litigation Demand ("December 9th Litigation Demand") and, therefore, the Motion to Dismiss must fail.

Delaware law requires a good faith and objective assessment of a shareholder demand.  It provides no safe-harbor for directors to ignore the incriminating judicial admissions of their friends and colleagues.  Thus, the legal sufficiency of the Complaint renders the Board's rejection wrongful.  It further reveals the bias, bad faith and unreasonableness of the Board's decision-making process.

Directors must put the best interests of the corporation ahead of all others.  But here, the Board elevated the personal interests of defendants, as reflected in the Motion to Dismiss to terminate this action.  It wrongfully refused to bring claims against defendants for breaching their fiduciary duties and unjustly enriching themselves.  If left unchecked, this board treachery will enable defendants to retain $282.1 million in unlawful insider trading proceeds at WWE's expense.

Equity can countenance no such result.  Dismissing this action will reward defendants for breaching their fiduciary duty to speak the entire truth when their admissions and judicial findings prove they knowingly misrepresented and omitted material facts about WWE's MENA media rights agreements.  The Motion to Dismiss therefore must be denied, and WWE's claims against its wayward fiduciaries McMahon, Barrios and Wilson allowed to proceed to trial.

Defendants' contrary arguments and affirmative defenses must fail.  First, resolution of the New York action purportedly within insurance limits does not resolve this case.  It merely reduces, not eliminates, WWE's damages.  While breaching their fiduciary duties, defendants collectively

pocketed $282.1 million in illicit insider trading proceeds by misappropriating WWE's confidential, material non-public information.  As defendants appropriately acknowledge, a corporate officer who sells his/her personal shares of the corporation without first disclosing adverse, material non-public information may be held liable for breach of fiduciary duty and required to disgorge such unlawful insider trading profits.  Therefore, defendants' arguments around the New York action fail.

Second, defendants' requested relief discredits their argument that plaintiff filed suit too soon.  In fact, exactly the opposite is true.  Defendants do not dispute that plaintiff waited six months for a substantive response to the December 9 Litigation Demand.  And only after a prolonged period of radio silence did plaintiff commence suit.   Plaintiff therefore gave WWE a full and fair opportunity to respond to the December 9th Litigation Demand, but WWE refused to substantively respond at all.

Third, defendants have sought to dismiss the entire action, because the Complaint supposedly fails to state any actionable claims.  Therefore, they have also concluded that the Complaint's predecessor – the Litigation Demand – lacks merit.  As a result, defendants have impliedly mooted any prematurity objection to this action moving forward.

Fictions aside, the Motion to Dismiss, and the implied rejection carried within it, is a textbook example of "wrongful refusal."  Defendants are attempting to use WWE's corporate power to extinguish the Company's legal claims against them, claims based on facts that another federal district court has already found are actionable against defendants under the far more rigors standards of the PSLRA.  This is improper.  However, this is precisely the outcome defendants seek to achieve through the Motion to Dismiss.

Fourth, the Board's decision to authorize the Motion to Dismiss reeks of board bias, board domination and control by defendant McMahon, bad faith and lack of reasonableness.  Therefore, it is not entitled to judicial deference.  The December 9th Litigation Demand leveled misconduct

charges against defendants that an Article III federal district court has already upheld as legally cognizable. Consistent with these findings, the Complaint also alleges that defendants' misconduct breached their legal duty to speak the entire truth. The primary difference here being that defendants' legal duty to speak the entire truth arises under Delaware corporation law and, as a result, is subject to lower pleading and proof standards.

More particularly, the Complaint alleges that defendants McMahon, Barrios and Wilson materially misleading WWE shareholders about the status and renewal of the Company's MENA media rights. The Complaint also alleges that, while misleading shareholders, defendants unlawfully profited by selling $282.1 million worth of their personal WWE stock based on misappropriated adverse, material non-public Company information.

Indeed, in the August 6th Order concluding that these facts stated actionable violations of law, the New York court expressly found that defendant McMahon's suspicious insider stock sales "provides evidence of 'a motive and opportunity to commit the fraud.'" "'The motive and opportunity element is generally met when corporate insiders misrepresent material facts to keep the price of stock high while selling their own shares at a profit." The New York court continued:

> The CAC alleges that McMahon sold 3,204,427 shares of WWE stock during the class period for proceeds of more than $261 million, a very significant sum. CAC ¶ 337. Although this constituted only 10% of his shares, this sale was unusual in light of McMahon's past trading practices. *Id.* ¶ 343 (alleging that McMahon's sales in the class period were 10 times higher as compared to a control period). McMahon's March 27, 2019 sale was also suspiciously timed, as it occurred only few days before the OSN Agreement ended and a month before the issuance of lower-than-expected income projections for the second-quarter of 2019, which resulted in a drop in WWE's stock price. *Id.* ¶¶ 346, 371-72. Plaintiff alleges that it was the termination of the OSN Agreement that resulted in these lower projection[s], and thus that defendants' concealment of the termination of the OSN Agreement prior to the sale helped protect the value of the sale for McMahon. *Id.* ¶ 346.

Egleston Decl., Ex. A at 27-28; ¶¶25, 42-46.

Rejecting defendants' argument mischaracterizing defendant McMahon's massive insider sales as innocuous the New York court further held: "While defendants counter that McMahon only

sold this stock to fund the creation of an additional sports league, . . . this alternative explanation merely raises a factual dispute that the Court must resolve in plaintiff's favor at this stage and is therefore not enough to defeat this inference of scienter." Egleston Decl., Ex. A at 28.

The WWE Board, however, ignored these judicial findings. Instead, it reached exactly the opposite conclusion, without offering any explanation for its decision. Based on the arguments in the Motion to Dismiss, in the Board's judgment no valid legal claims lie against defendants, although the New York court – an objective arbiter – concluded otherwise. The Board even improperly rejected breach of fiduciary duty claims against defendants, despite the lower pleading and proof standards involved therewith.

Instead, the Board authorized the filing of the instant Motion to Dismiss, with its carefully crafted set of facts that scrupulously avoids defendants' judicial admissions of falsity and scienter in the New York action. This level of centrifuge further illustrates why the Board's rejection is wrongful.

Accordingly, for all the reasons herein, the Board's rejection of the December 9th Litigation Demand is entitled to no judicial deference, and the Company's valuable claims against defendants should now move forward under plaintiff's control and direction.

## II.    OVERVIEW OF THE ACTION AND PROCEDURAL POSTURE

This is a shareholder derivative action on behalf of WWE. WWE produces wrestling entertainment content for distribution worldwide, including in the MENA region. The MENA region is one of the Company's most lucrative and, therefore, important regions. Defendants, at all relevant times, were WWE's top three senior executive officers. ¶¶1, 17-19.

### A.    Defendants Breach Their Fiduciary Duty to Speak the Entire Truth and Avoid Self-Dealing

In November 2018, WWE's media rights agreement with OSN to distribute WWE wrestling content in the MENA region prematurely ended over a dispute. This left WWE scrambling to find a

replacement media rights agreement with the Saudi General Sports Authority before expiration of the media rights under the OSN Agreement.  ¶¶2, 8, 24, 49-50.

Rather than disclose these adverse, material non-public facts, defendants embarked upon an unlawful scheme to maintain the trading price of WWE common stock at artificially inflated levels. This scheme breached defendants' fiduciary duty under Delaware law to speak the entire truth whenever undertook to say anything about the Company.  ¶¶5, 21, 25.

Nevertheless, as 2019 and 2020 unfolded, defendants, despite knowledge of the true facts, repeatedly misled WWE shareholders about the status and renewal prospects for the OSN Agreement, which the Company formally terminated with OSN in late 2018.  For example, on February 7, 2019, with respect to renewal of WWE's critically important media rights in the MENA region, defendant Barrios knowingly and falsely misrepresented "it's fair to say that all the agreements will be completed substantively by the middle of the year, so we'll announce those as they get done."  ¶28.  Then, a few weeks later on February 26, 2019, defendant Barrios further knowingly and falsely misrepresented that the negotiations on the MENA distribution rights deal were "ongoing," with a target to "get that locked down by the middle of the year."  ¶30.

On July 25, 2019, in an earnings release announcing WWE's 2Q19 results, ended June 30, 2019, defendants McMahon, Barrios and Wilson knowingly and falsely assured shareholders that the renewal of WWE's MENA media rights were on track.  As to the timing for completion of the media rights deal, defendants knowingly and falsely misrepresented that "[t]he Company believes it has agreements in principle with the Saudi General Sports Authority on the broad terms for the latter two items; however, this understanding is nonbinding."  ¶33.

On the same date, during a conference call with shareholders, defendants McMahon further misrepresented, with respect to WWE's MENA the media rights agreements, that "[o]bviously, there's India and MENA to do, and we are going to be close to announcing those deals very soon."

¶34.  Defendants Barrios and Wilson added, respectively, that "[d]uring the quarter, we achieved adjusted OIBDA of $34.6 million, which exceeded our guidance, primarily due to enhanced revenue recognized in conjunction with our recent event in Saudi Arabia," and that "[d]uring the quarter, we continue[d] to successfully stage large-scale events for our fans, including . . . Super ShowDown in Jeddah, Saudi Arabia."  ¶¶34.  While making each positive statement above, each defendant knowingly omitted to disclose to shareholder the adverse, material non-public fact that, by late 2018, WWE had already formally terminated its media rights agreement with OSN.  ¶¶3-4, 8-9, 49-50.

Defendants also materially misled WWE shareholders about the status of WWE's efforts to secure a replacement media rights agreement with Saudi Arabia.  Defendants knew, or recklessly disregarded, the fact that public revelation of the Company's difficulties securing a media rights agreement in the MENA region would cause a lowering of the Company's financial projections and trigger a decline in the trading price of WWE common stock.  ¶¶3-4.

Worse yet, before publicly disclosing the adverse, material non-public facts around the Company's desperate MENA media rights situation, defendants unloaded over 3.4 million shares of their personal WWE common stock, for insider trading proceeds of $282.1 million – a classic violation of defendants' fiduciary duty of loyalty as WWE's top executive officers.  ¶¶26, 42-46.

Defendants' scheme continued unabated until January 30, 2020, when the truth emerged.  On this news, the trading price of WWE common stock collapsed $13.42 per share, or 21.5%, wiping out millions in once-valuable shareholders' equity.  Thereafter, WWE shareholders sued defendants McMahon, Barrios, Wilson and WWE in New York federal court for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934.  ¶¶6, 7, 48; Egleston Decl., Ex. A.

**B.  The New York Action:  Defendants' Admissions and Judicial Findings**

In an August 6, 2020 Order denying the motion to dismiss filed by defendants in the New York action, the district court ruled that "[g]iven WWE could not have been engaged in such

- 10 –

renewal negotiations at the time because OSN had already terminated the agreement, the complaint has adequately explained with particularity why defendants' 'renewal' and 'ongoing' negotiation statements were false and misleading." ¶¶8, 49; Egleston Decl., Ex. A at 10. "And even if this were not the case," the court concluded, "it is virtually inconceivable that the CEO and Co-Presidents of WWE would not have been aware of the formal termination by WWE of this important contract – or so a reasonable jury could infer from the facts pleaded in the complaint." Egleston Decl., Ex. A at 26-27.

The New York court premised its holding on two key facts. First, that defendants did not dispute that they agreed to formally terminate WWE's MENA media rights agreement with OSN in December 2018, effective March 31, 2019. And second, that defendants did not dispute that they were aware by late 2018 that the agreement would not be renewed. In the words of the New York court, "it is virtually inconceivable that the CEO and Co-Presidents of WWE would not have been aware of the formal termination by WWE of this important contract – or so a reasonable jury could infer from the facts pleaded in the complaint." Egleston Decl., Ex. A at 26-27.

The New York court similarly found defendants' positive statements about WWE's purported replacement media rights contract with the Saudi Arabia General Sports Authority ("Saudi Arabia") were knowingly false when made. Specifically, the court held that "[a]s with the OSN related statements, there is circumstantial evidence that defendants 'knew facts . . . suggesting that their public statements' about the replacement agreement 'were not accurate.'" Egleston Decl., Ex. A at 29. Moreover, the New York court held that the federal securities complaint's

> allegations, particularly in light of the defendants' senior positions at WWE and the alleged importance of the MENA replacement agreement, support the proposition that not only WWE generally but also the individual defendants in particular knew or recklessly disregarded that their statement that there was in fact an agreement in principle was false.

Egleston Decl., Ex. A at 29.

C.      **The Filing of the Action, Defendants' Removal and the Instant Motion to Dismiss**

By misleading WWE shareholders and insider selling, defendants breached their fiduciary duties to avoid self-dealing and the dissemination of false company information, and thereby unjustly enriched themselves at WWE's expense.  Nevertheless, WWE's Board has not, and will not, take legal action against defendants.  Instead, WWE's Board ignored plaintiff's December 9th Litigation Demand.  ¶52; Egleston Decl., Ex. C.

After six months, on June 7, 2021, plaintiff commenced this action by filing the Complaint in the Superior Court of the State of Connecticut.  Thereafter, on July 7, 2021, defendants removed the action to this Court.  On July 27, 2021, plaintiff filed a Motion to Remand.  ¶¶52-53; ECF. Nos. 1 and 39.

Realizing jurisdiction before this Court is tenuous at best, on July 7, 2021, defendants filed the instant Motion to Dismiss.  The filing of the Motion to Dismiss does not create jurisdiction where it does not exist.  Although, insofar as this Court may properly consider the Motion to Dismiss, the ground on which defendants removed this action make the judicial admissions and determination against defendants in a parallel New York action germane to this proceeding.

III.    **THE SUFFICIENCY OF THE COMPLAINT ESTABLISHES THE BOARD'S WRONGFUL REFUSAL OF THE LITIGATION DEMAND**

Taken as true, the factual allegations of the Complaint show that defendants knowingly mislead shareholders about the status and renewal prospects for WWE's media rights in the MENA region, while enriching themselves by selling over $280 million worth of their personal WWE shares based on adverse, material non-public information.  These acts and omissions breached the fiduciary duties of care and loyalty defendants owed to WWE to speak the entire truth and avoid self-dealing based on the Company's confidential information.  Yet, the Board remains steadfast in its refusal to assert claims vindicating WWE's rights against defendants.  Because the Complaint states valid legal

claims, based on facts tested and found legally cognizable in the New York action, the Board's refusal to sue defendants for knowingly misleading WWE shareholders while enriching themselves at WWE expense constitutes "wrongful refusal." Therefore, the Motion to Dismiss must be denied.

### A.      The Applicable Pleading Standards

WWE is a Delaware corporation. Therefore, Delaware law governs the substantive issues of law. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991).

Federal law governs procedural issues in this case. On a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the factual allegations of the complaint are taken as true, read together and construed in the light most favorable to the plaintiff. *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 322 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal courts follow notice pleading requirements in which a plaintiff is only required to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard . . . does not require 'detailed factual allegations,'" but rather "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678.

The effect of making a stockholder demand pursuant to Delaware law "is to place control of the derivative litigation in the hands of the board of directors." *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990). After the demand is issued, the board must decide whether to pursue litigation, resolve the grievance short of litigation, or reject the demand. *Zapata Corp. v. Maldonado*, 430 A.2d 779, 783 (Del. 1981).

Importantly, directors served with a stockholder demand cannot remain "neutral." *Grimes v. Donald*, 673 A.2d 1207 (Del. 1996). Instead, once a demand has been made, directors have a duty to conduct "an objective and thorough investigation." *Zapata Corp.*, 430 A.2d at 788; *Allison on*

- 13 –

*Behalf of Gen. Motors Corp. v. Gen. Motors Corp*., 604 F. Supp. 1106, 1117 (D. Del. 1985); *In re Oracle Corp. Deriv. Litig*., 808 A.2d 1206, 1212 (Del. Ch. 2002) (once a demand is made, directors must conduct an investigation into the allegations in the demand and determine whether pursuing the demanded litigation is in the best interests of the corporation).

### B.    The Complaint Adequately Alleges Breach of Fiduciary Duty for Making Knowingly False Statements and Material Omissions

The "fiduciary duties of officers are the same as . . . directors" of a Delaware corporation, both "owe fiduciary duties of care and loyalty." *Gantler v. Stephens*, 965 A.2d 695, 708-09 (Del. 2009). Although officers of a Delaware corporation "face a statutory exposure to liability that is often greater than directors." *Hampshire Grp., Ltd. v. Kuttner*, No. 3607-VCS, 2010 WL 2739995, at *13 (Del. Ch. July 12, 2010).

Corporate officers' "fiduciary duties include the duty to deal with their stockholders honestly." *Malone v. Brincat*, 722 A.2d 5, 9 (Del. 1998). When the officers of the corporation "communicate with shareholders, they . . . must do so with **complete** candor." *In re Tyson Foods, Inc*., No. 1106-CC, 2007 WL 2351071, at *10 (Del. Ch. Aug. 15, 2007) (emphasis in original). "Communications that depart from this expectation . . . violate the fiduciary duties that protect shareholders." *In re INFOUSA, Inc. S'holders Litig*., 953 A.2d 963, 990 (Del. Ch. 2007). As a result, corporate officers "who knowingly disseminate false information that results in corporate injury or damage to an individual stockholder violate their fiduciary duty." *Malone*, 722 A.2d at 9.[4]

A breach of fiduciary duty claim does not sound in fraud. *In re Am. Bus. Fin. Servs., Inc*., 361 B.R. 747, 758 (Bankr. D. Del. 2007) ("Delaware courts generally do not apply Rule 9(b) to state

---

[4]    Federal law is in accord. *See First Va. Bankshares v. Benson*, 559 F.2d 1307, 1317 (5th Cir. 1977) ("a duty to speak the full truth arises when a defendant undertakes to say anything"); *Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994) ("under Rule 10b-5, 'a duty to speak the full truth arises when a defendant undertakes a duty to say anything'"); *Grae v. Corr. Corp. of Am.*, No. 3:16-cv-2267, 2017 WL 6442145, at *13 (M.D. Tenn. Dec. 18, 2017) ("where a defendant initially had no obligation to disclose facts on a particular subject, but he chooses voluntarily to address the subject in relation to a securities transaction, he 'assume[s] a duty to speak fully and truthfully on th[e] subject[ ]'").

law claims for breach of fiduciary duty."); *In re Fruehauf Trailer Corp.*, 250 B.R. 168, 197-98 (D. Del. 2000) ("Rule 9(b) . . . generally does not apply to the state law claims of breach of fiduciary duty . . . ."). Therefore, Fed. R. Civ. P. 9(b)'s particularity requirement does not apply. If it did, however, Rule 9(b) does not require that scienter be pled with particularity; rather, it states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, the Complaint's facts, taken as true, show that defendants knowingly disseminated materially false and misleading information about WWE's MENA media rights that damaged WWE and its shareholders. More specifically, defendants do not dispute that, as WWE's top executive officers, they are fiduciaries of WWE and, in turn, owe WWE fiduciary duties of care and loyalty. Defendants further do not dispute they owe WWE a duty to speak the entire truth as an element of their fiduciary duty of loyalty. Nor do defendants dispute that WWE formally terminated its important media rights contract with OSN to broadcast events in the MENA region in late 2018, effective March 31, 2019. And, as the New York court held, it would be inconceivable for defendants, as WWE's CEO and Co-Presidents, to be unaware of the termination of the OBN early by WWE. Egleston Decl., Ex. A at 26-27; *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015) (noting that judicial admissions in one case may be treated as evidentiary admissions in another).

Nevertheless, when defendants voluntarily chose to speak on behalf of the Company about the status and renewal of WWE's MENA media rights, they knowingly failed to disclose that the Company had already terminated the OSN agreement and that it could not be renewed. ¶¶2-5, 24-25, 49-50; Egleston Decl., Ex. A at 8-9, 25-27. Although under a legal duty to speak the entire truth about WWE's MENA media rights, the undisputed records show defendants did not. Their knowing failure to disclose adverse, material non-public facts to WWE shareholders breached defendants'

- 15 –

fiduciary duty of loyalty to speak the entire truth and, as a result, they may be held liable to WWE for damages and disgorgement.  Likewise, defendants knowingly misrepresented the likelihood of securing a replacement MENA media rights agreement in breach of their fiduciary duty of loyalty. ¶¶9, 50; Egleston Decl., Ex. A at 29.[5]

Defendants' false statements and material omissions, upon which WWE and its shareholders relied upon, caused WWE common stock to trade at artificially inflated levels, as defendants intended.  But once the truth emerged, the trading price collapsed and injured WWE.  ¶¶3-6, 26, 42, 47-50, 58.

Nothing more is necessary to state a claim against defendants for breach of fiduciary duty. This fact also constitutes a "wrongful refusal" by the Board to sue defendants.

### C.      The Complaint Adequately Alleges Breach of Fiduciary Duty for Self-Dealing and Insider Trading

Defendants also breached their fiduciary duty of loyalty by self-dealing in WWE stock. Delaware law prohibits corporate fiduciaries from selling their personal shares of the corporation without first disclosing all adverse, material non-public information.  *Brophy v. Cities Serv. Co*., 70 A.2d 5 (Del. Ch. 1949) (authorizing corporation to recover from its fiduciaries for harm caused by insider trading).

As the Delaware Chancery Court opined in *Guttman v. Huang*, 823 A.2d 492, 505 (Del. Ch. 2003), "Delaware law has long held . . . that directors who misuse company information to profit at the expense of innocent buyers of their stock should disgorge their profits."  As former Vice Chancellor Berger put it, "*Brophy* is rooted in trust principles that provide 'that, if a person in a

---

[5]     *See In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489 (S.D.N.Y. 2004) ("[w]hen a plaintiff has adequately alleged that the defendant made false or misleading statements, the fact that those statements concerned the core operations of the company supports the inference that the defendant knew or should have known the statements were false when made"); *In re Fitbit, Inc.*, No. 2017-0402-JRS, 2018 Del. Ch. LEXIS 1218, at *9 (Del. Ch. Jan. 14, 2018) ("Given my reliance on additional, particularly alleged facts, a pleading stage inference of scienter, even if that inference relied in part on the core operations doctrine, was appropriate.").

confidential or fiduciary position, in breach of his duty, ***uses his knowledge*** to make a profit for himself, he is accountable for such profit'" (emphasis in original). *Id*. at 505; *see also Rosenberg v. Oolie*, No. 11,134, 1989 WL 122084, at *3 (Del. Ch. Oct. 16, 1989) ("The principle, as announced in *Brophy*, is that, if 'a person "in a confidential or fiduciary position, in breach of his duty, uses his knowledge to make a profit for himself, he is accountable for such profit."'"); *Stepak v. Ross*, No. 7047, 1985 WL 21137, at *5 (Del. Ch. Sept. 5, 1985) ("It is, of course, clear that Warner is entitled to recover all insider profits made by the individual defendants if the individual defendants breached their fiduciary duties to Warner.").

Under Delaware law, a claim for breach of fiduciary duty based on insider trading will lie where, "'1) the corporate fiduciary possessed material, nonpublic company information; and 2) the corporate fiduciary used that information improperly by making trades because she was motivated, in whole or in part, by the substance of that information.'" *In re Am. Int'l Grp., Inc*., 965 A.2d 763, 800 (Del. Ch. 2009) ("*AIG*"). Where, as here, the complaint alleges "'that each sale by each individual defendant was entered into and completed on the basis of, and because of, adverse material non-public information,'" *Rattner v. Bidzos*, No. 19700, 2003 WL 22284323, at * 10-*11 (Del. Ch. Sept. 30, 2003), a motion to dismiss a *Brophy* claim must fail.

The factual allegation of the Complaint states an actionable *Brophy* claim for breach of fiduciary duty. By no later than late 2018, defendants knew, or recklessly disregarded that WWE had formally terminated its MENA media rights agreement with OSN in late 2018, and that it could not be renewed. Yet, defendants sold their personal WWE shares at inflated prices reaping massive profits they would not have otherwise received had they first disclosed the termination of WWE's media rights. Their suspicious stock sales were motivated by and based on the adverse, material non-public information about the status and renewal of WWE's media rights in the MENA, which

material information defendants misappropriated from WWE and used for their personal benefit in breach of their fiduciary duties to avoid self-dealing.  ¶¶5, 42-46; Egleston Decl., Ex. A at 27-29.

When the truth emerged after defendants had completed their insider stock sales, the trading price of WWE common stock collapsed.  However, defendants avoided these losses by selling their shares before the truth emerged based on the confidential adverse, material information about the Company's MENA media rights.  ¶¶44-46; Egleston Decl., Ex. A at 27-29.

As a result of defendants' misconduct, WWE suffered damages.  These damages include the $282.1 million in unlawful insider trading proceeds pocketed by misappropriating WWE's confidential information.  WWE also was exposed to liability for violations of the federal securities laws, including the out-of-pocket costs paid to access any available insurance.  Nothing more is necessary to state an actionable *Brophy* claim against defendants under Delaware law.

The New York court's August 6th Order finding defendants' stock sales actionable under the federal securities laws is persuasive evidence of their actionability here.  Indeed, applying the far more stringent pleading standard of the PSLRA, the New York court reached this exact conclusion, stating,

> defendant McMahon's stock sales during the class period that . . . a finding of scienter as to the OSN-related misrepresentations. . . .  McMahon's March 27, 2019 sale was also suspiciously timed, as it occurred only few days before the OSN Agreement ended and a month before the issuance of lower-than-expected income projections for the second-quarter of 2019, which resulted in a drop in WWE's stock price.  *Id*. ¶¶ 346, 371-72.  Plaintiff alleges that it was the termination of the OSN Agreement that resulted in these lower projection[s], and thus that defendants' concealment of the termination of the OSN Agreement prior to the sale helped protect the value of the sale for McMahon. . . .

Egleston Decl., Ex. A at 27-28; ¶¶42-46.

The same result should attain here under the far lower pleading standard this Court must apply on a motion to dismiss.  *Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831, 838 (Del. 2011) ("[I]t is inequitable to permit the fiduciary to profit from using confidential corporate

information.  Even if the corporation did not suffer actual harm, equity requires disgorgement of that profit.").

### D.    The Complaint Adequately Alleges Unjust Enrichment

"[A] defendant has been unjustly enriched and must pay restitution if '(1) the plaintiff confers a benefit on the defendant; (2) the defendant retains the benefit, and (3) under the circumstances, the defendant's retention of the benefit is unjust.'"  *Qatar Nat'l Bank v. Winmar, Inc.*, 650 F. Supp. 2d 1, 8 (D.D.C. 2009).  Importantly, "Rule 9(b) . . . generally does not apply to . . . state law claims of . . . unjust enrichment."  *In re Fruehauf Trailer Corp.*, 250 B.R. at 197-98.

Here, the Complaint alleges that defendants, in breach of their fiduciary duties, sold $282.1 million worth of their personal WWE shares without first disclosing adverse, material, non-public information.  Defendants' retention of these financial benefits would unjustly enrich them at the expense of WWE.  ¶¶42-46, 66-69.

Taken as true, these facts are sufficient to support a claim for unjust enrichment.  *In re Tyson Foods, Inc.*, 919 A.2d 563, 602-03 (Del. Ch. 2007); *Calma on Behalf of Citrix Sys., Inc. v. Templeton*, 114 A.3d 563, 591 n.130 (Del. Ch. 2015) ("'Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed . . . .'").

### E.    The Complaint Adequately Alleges Indemnification and Contribution

The Complaint, taken as true, states actionable claims for indemnification and contribution. It is axiomatic that "[a] corporation like [WWE] only acts through humans like [defendants McMahon, Barrios and Wilson]."  *AIG*, 965 A.2d at 802.  Thus, a claim for indemnification and contribution will be available to the corporation where defendants "have not provided a sound reason why, as between a corporation that only faces liability because a human caused it to break the law, and that human, the corporation should not be indemnified by the human wrongdoer for the harm

suffered by the corporation." *Id.* Here, but for defendants McMahon, Barrios and Wilson's unlawful scheme, WWE would not have suffered injury. Accordingly, defendants are legally required under Delaware law to provide WWE indemnification and contribution. *AIG*, 965 A.2d at 802-04.

Defendants' reliance on *In re TrueCar, Inc., S'holder Deriv. Litig.*, No. 2019-0672-AGB, 2020 WL 5816761 (Del. Ch. Sept. 30, 2020), is misplaced. In *TrueCar*, the insurance paid 100% of the settlement, although in this case that is uncertain at best. *In re TrueCar, Inc.*, 2020 WL 5816761, at *27. There is no evidence in the record before this Court that proves that WWE paid no self-insured retention under the terms of the applicable insurance policies in connection with either the defense of the New York securities class action and/or its settlement. Nor could such evidence be in the record because this case commenced before the settlement in the New York action, unlike in *TrueCar*. *Id.* at *22. Thus, the Complaint contains no allegations regarding the resolution of the New York securities action filed against WWE.

Moreover, and perhaps most importantly, the answer to how much WWE paid in self-insured retention under the terms of the applicable insurance policies remains within defendants' exclusive possession, custody and control. They could have volunteered this information to the Court, but they did not. In *In re Tyson Foods, Inc.*, 919 A.2d at 578, former Chancellor Chandler observed that "it is more reasonable to infer that exculpatory documents would be provided than to believe the opposite: that such documents existed and yet were inexplicably withheld." So too here.

Accordingly, defendants' fact-based and premature "insurance" affirmative defense must fail. As in *AIG*, this Court should decline to dismiss the Complaint's indemnification and contribution claims against defendants on the incomplete record in this case. *AIG*, 965 A.2d at 803-04 (declining to dismiss indemnification and contribution claims at the pleadings stage until a fuller record exists).

Moreover, WWE's damages are not tied exclusively to the New York action, as defendants erroneously contend.  Defendants' $282.1 million in unlawful trading proceeds are also recoverable by WWE.  *Stepak*, 1985 WL 21137, at *5 ("It is, of course, clear that Warner is entitled to recover all insider profits made by the individual defendants if the individual defendants breached their fiduciary duties to Warner.").

Furthermore, the fact that WWE settled the New York action does not extinguish WWE's indemnification and contribution claims against defendants because the settlement in the New York action settled the shareholders' claims against defendants too.  *AIG*, 965 A.2d at 803 ("if that settlement agreement extinguished claims against Matthews and Tizzio as well, then AIG may sue.").

**F.     The Complaint Adequately Alleges Aiding and Abetting Breach of Fiduciary Duty**

Under Delaware law, corporate fiduciaries can be held liable for aiding and abetting the misconduct of other persons whose acts and/or omissions injure the corporation.  To state a claim for aiding and abetting a breach of fiduciary duty, a complaint need only allege, "(1) the existence of a fiduciary relationship; (2) the fiduciary breached its duty; (3) a defendant, who is not a fiduciary, knowingly participated in a breach; and (4) damages to the plaintiff resulted from the concerted action of the fiduciary and the nonfiduciary." *Globis Partners, L.P. v. Plumtree Software, Inc.*, No. 1577-VCP, 2007 WL 4292024, at *15 (Del. Ch. Nov. 30, 2007).

Here, the Complaint's factual allegations, when taken as true, pass this test and state an actionable claim for aiding and abetting breach of fiduciary duty against defendants.  ¶¶3-5, 24-26, 61-65.  As detailed in the Complaint, defendants, and each of them, stood in a fiduciary relationship with WWE as its top corporate officers.  ¶¶17-19, 21.  They also breached their fiduciary duties of loyalty and care by making knowingly false statements about the status and renewal of WWE's MENA media rights, while selling $282.1 million worth of their personal WWE shares at artificially

inflated priced without first disclosing the truth about WWE's MENA media rights.    ¶43. Defendants used a non-fiduciary, nominal defendant WWE, as a conduit for their unlawful misrepresentations and material omission about the Company's media rights in the MENA region. ¶¶3-5,24-26, 47-48.[6]   Defendants' breaches of fiduciary resulted in damages, including the illicit insider trading proceeds at the expense of plaintiff, on behalf of WWE, and WWE's other non-controlling public shareholders.

Therefore, the Complaint's aiding and abetting breach of fiduciary duty claim is actionable and further illustrates the Board's wrongful rejection of the Litigation Demand.

### G.    The Board Wrongfully Refused the Claims Against Defendants Set Forth in the Litigation Demand

Defendants also complain that plaintiff filed suit too soon.  Not so.  *See Witchko v. Schorsch*, No. 15 Civ. 6043 (AKH), 2016 WL 3887289 (S.D.N.Y. June 9, 2016) (denying motion to dismiss demand made shareholder derivative action where a board of directors failed to timely respond to a shareholder demand and had no rationale purpose for its delay); *Ingrao v. Stoppelman*, No. 20-cv-02753-EMC, 2020 WL 7025083, at *6 (N.D. Cal. Nov. 30, 2020) (denying motion to dismiss demand made shareholder derivative complaint where "[d]efendants [did] not offer[] any evidence that the Board investigated Mr. Ingrao's Demand," but rather stated in conclusory terms that the Board is reviewing the Demand).

Plaintiff waited six months before commencing this action.  Further, the Board has already, in fact, refused the December 9th Litigation Demand.  Defendants could not seek dismissal of the Complaint for failure to state a claim without Board authorization.  And the Board could not authorize such a filing without first deciding to reject the December 9th Litigation Demand.

---

[6]    *See In re Wayport, Inc. Litig.*, 76 A.3d 296, 322-23 (Del. Ch. 2013) ("As a corporate entity, Wayport did not owe fiduciary duties to its stockholders."); *In re Dataproducts Corp. S'holders Litig.*, No. 11164, 1991 Del. Ch. LEXIS 149, at *18 (Del. Ch. Aug. 22, 1991) ("a corporation qua corporate entity is not a fiduciary of, and thus cannot owe a fiduciary duty to, its shareholders").  Decisions holding a corporation cannot be liable for aiding and abetting a breach of fiduciary duty by its directors and officers involve direct actions where the plaintiff sought to hold the corporation liable.

Defendants' requested relief therefore discredits their arguments that plaintiff filed too early, before the Board could consider the December 9th Litigation Demand.  ¶¶52-55.

Most importantly, the Board's rejection is wrong.  As detailed in the December 9th Litigation Demand, defendants lied to shareholders about the Company's MENA media rights, as well as sold $282.1 million worth of their personal WWE stock based on the Company's adverse, material non-public information.  An Article III federal district court has already determined that defendants' misconduct violated the federal securities laws.  The New York court reached its conclusion while applying the heightened pleading standards under the PSLRA, which are more rigorous than the standards applicable here under Delaware law and Rule 23.1.

The Board ignored these judicial findings, without explanation, although made by an objective arbiter.  This ill-considered decision illustrates the bias, bad faith and lack of reasonableness that imbues the Board's decision-making process and requires denial of the Motion to Dismiss under Rule 23.1.  The Board wrongfully rejected the December 9th Litigation Demand and, therefore, the Company's claims against defendants should move forward under plaintiff's control and direction.

IV.     CONCLUSION

Accordingly, the Motion to Dismiss should be held in abeyance, or denied without prejudice, until after the Court determines whether subject matter jurisdiction exists.  *See* Plaintiff's Motion to Remand, dated July 27, 2021 (ECF. No. 39).  Alternatively, the Motion to Dismiss should be denied because the Complaint's facts state actionable claims, demonstrating the Board wrongfully refused the December 9th Litigation Demand.

DATED:  July 28, 2021                              Respectfully submitted,

                                                  **GAINEY McKENNA & EGLESTON**


                                                  */s/ Gregory M. Egleston*
                                                  GREGORY M. EGLESTON (ct19709)
                                                  501 Fifth Avenue, 19th Floor
                                                  New York, NY  10017
                                                  Telephone: 212/983-1300
                                                  Facsimile: 212/983-0380
                                                  Email: egleston@gme-law.com

                                                  **ROBBINS GELLER RUDMAN
                                                    & DOWD LLP**
                                                  TRAVIS E. DOWNS III
                                                  BENNY C. GOODMAN III
                                                  ERIK W. LUEDEKE
                                                  655 West Broadway, Suite 1900
                                                  San Diego, CA  92101
                                                  Telephone: 619/231-1058
                                                  Facsimile: 619/231-7423
                                                  Email: travisd@rgrdlaw.com
                                                  Email: bennyg@rgrdlaw.com
                                                  Email: eluedeke@rgrdlaw.com

                                                  *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on July 28, 2021, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants.

*/s/ Gregory M. Egleston*
Gregory M. Egleston